## Turner v. Commonwealth.

(Decided October 16, 1931.)

ROSE & STAMPER for appellant.

J. W. CAMMACK, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

About 8:30 or 9 o'clock on the afternoon of November 25, 1928, the appellant and defendant below, Cale Turner, shot and killed John Smith in Owsley county. On December 5 following, he was indicted by the grand jury of that county and charged with murdering his victim. At his trial on June 18, 1930, he was convicted of voluntary manslaughter and punished by confinement in the penitentiary for a period of five years. His motion for a new trial was overruled, and from that order, and the judgment pronounced on the verdict, he prosecutes this appeal, and by his counsel argues as grounds for reversal: (1) Error in overruling defendant's motion for a continuance; (2) error in sustaining the commonwealth's motion for the prosecuting witness, Sam Smith, to remain in the courtroom during the taking of the evidence; (3) error in admitting and rejecting evidence; and (4) error in failing to properly instruct the jury.

The complaints against the verdict as set out in the motion and grounds for a new trial are by no means so restricted; but those not argued or relied on in brief of counsel for defendant as above classified will be treated as abandoned under an unbroken line of opinions of this court. However, the additional grounds appearing in the motion for a new trial, all of which we have closely examined and considered, are equally as unmeritorious, if not more so, than the ones above enumerated and

argued in this court, and which latter ones only will be considered and disposed of in this opinion.

■ The only absent witness for which a continuance was sought was John D. Miller, and who, as will later appear, was one of the alleged enemies and assailants of appellant on the fatal occasion. The affidavit said that he (Miller) was then in the state of Ohio, but whether he was permanently or temporarily in that state was not disclosed, nor was it made to appear of what state or county he was a resident, leaving the court uninformed as to whether that witness resided within the jurisdiction of the court or out of it. But, independently of that defective presentation, the court and the commonwealth's attorney agreed that defendant might read that part of the affidavit containing the alleged testimony of Miller, and the motion for a continuance was overruled. Miller's testimony was but cumulative with some portions of that given by defendant and his brother, and, after defendant announced that he was through with the introduction of his testimony the court called his attention to the fact that he had not read his affidavit incorporating the testimony of Miller, to which counsel made no response and declined to read the affidavit.

The recitation of the above facts, as disclosed by the record relating to this ground, demonstrates the fallacy of the argument in its support. In the first place, the indictment had been pending for more than two years and the testimony of the alleged absent witness was cumulative in its character. The Criminal Code of Practice, sec. 189, expressly authorizes the course pursued in this case, and which has been approved by us in an unbroken line of decisions. It is true that the Code provisions vest a discretion in the court upon the question of continuing the case, or forcing a trial on condition that the testimony of the absent witness, as set out in the affidavit, may be read as such witness' testimony, and there have been cases before this court where the circumstances were such as to force the conclusion that the trial court abused a sound discretion in not continuing the case. Instances of such cases are, where the testimony of the absent witness was upon a vitally material issue concerning which no other witness testified in the case; or instances where the defendant had recently been indicted and had not been afforded an opportunity to prepare his case or otherwise procure the testimony of the absent witness; and it is conceivable that there might

be other instances, growing out of the multiplied and complex conditions of human affairs, that a sound discretion would dictate a continuance of the case.

But none such are disclosed by this record and it furnishes only an ordinary and quite universal instance of an absent witness whose testimony relates to an issue upon which the defendant and another or others of his witnesses testified. There is, therefore, no unusual circumstance in this case to take it out of the well-established rule that the court did not abuse a sound discretion in overruling the motion for a continuance, upon condition that defendant might read the testimony of the absent witness, as set out in his affidavit. However, it will be observed that defendant did not see proper to take advantage of the right afforded him by the ruling of the court and declined to read the affidavit, even after the court had called counsel's attention to the apparent oversight. It is therefore manifest that this ground is wholly without merit.

■ Section 601 of the Civil Code of Practice permits the court to require separation of the witnesses during the taking of testimony if requested by either party, and section 151 of the Criminal Code of Practice makes reference to the Civil Code, and, in construing the practice with reference to conducting criminal trials, this court has uniformly held that the same discretion is given to the court in the trial of criminal prosecutions. But the rule is not enacted in mandatory terms, nor has it been so construed by this court. On the contrary, in the case of Boyd v. Commonwealth, 194 Ky. 73, 238 S. W. 182, it was expressly held that the rule was not mandatory in criminal prosecutions, and in the later case of Whitson v. Commonwealth, 197 Ky. 745, 247 S. W. 979, and others referred to in the opinion rendered therein, we held that it was within the sound discretion of the court and not improper to permit a prosecuting witness to remain in the courtroom during the trial for the purpose of aiding and assisting the attorney for the commonwealth in developing the case. It is no unusual practice for such a course to be pursued, and, when done, it has always been approved by this court, unless under the peculiar facts and circumstances of the case it was thought that a sound discretion in doing so was abused. No such peculiar circumstances exist in this case, and none of the cases relied on in support of this ground are in point. An examination of our opinions will disclose that on this

540

question each case is largely governed by its own peculiar facts creating the situation that should govern the discretion of the trial court in making his ruling upon the question of practice, and since there are no peculiar facts in this case militating against the court's failure to exercise his sound discretion in this case, it necessarily follows that this ground also is without merit.

■ In support of ground 3, counsel refer to certain occurrences at the trial during the cross-examination of prosecuting witnesses and complain of certain rulings of the court as being highly prejudicial. In their entirety they are:

(a) Alleged refusal of the court to permit appellant's attorneys to cross-examine the prosecuting witness, Sam Smith, concerning a shotgun that he had brought to the home of his father, deceased, on the fatal night. Witness had stated in his examination in chief that he carried the gun from his home to that of his father, where Miller was, so that the latter could restore its plunger which was so impaired as that it would not operate. He was asked on cross-examination why he had not delivered the gun to Miller earlier in the day when the latter was at his house, and the court announced: "No difference why he didn't." No objection or exceptions were taken to the remark of the court, or to that ruling if it might be considered as such, nor was there any avowal as to what the witness would have answered if not interrupted by the court.

(b) The same witness had testified in chief that his father, Miller, and perhaps others, had endeavored to take from appellant a pistol that he was waving and pointing at the inmates of the home of the deceased where the gathering was, but that he succeeded in getting loose from them, and finally the mother of the witness grabbed the pistol in the hands of appellant and wrenched it therefrom. On cross-examination, defendant's counsel asked the witness this question, "You tell the jury that these three men could not take the pistol away from Cale Turner but that your mother could and did take it?" to which the commonwealth objected, and its objections were sustained. No exception whatever was taken or made on behalf of defendant, nor was there any avowal as to what his answer would be if the court had permitted him to make one.

(c) Florence Smith, the daughter of deceased, testified, in substance, that she heard the shooting about 120

or 150 yards above the gate in front of her father's residence and from whence the parties had but very recently departed, and that she ran out of the house and in that direction and found Miller seriously wounded, but from which he later recovered, but did not find her father, and that she then went to the nearby home of her brother, Sam, for only a brief stop and then continued her search for her father, whose dead body she later found by the side of the path or road partially hidden by weeds and bushes on one side thereof. On cross-examination, she was asked by defendant's counsel, "Did you intend to go to Sam's before you heard the shooting?" to which an objection by the commonwealth was sustained, but no avowal was made as to what the answer of the witness was expected to· be.

(d) Henry Turner, a witness for defendant, testified to some contradictory statements of the prosecuting witness, Sam Smith, made upon an occasion following the killing, and one of the questions asked the witness Turner was objected to by the commonwealth and the objection was sustained, but no avowal was made as to what the answer would be. However, if counsel by avowal had made the most favorable answer that the witness could have given, it would have been, in substance, no more than what had already been proven by that witness. It has so often been said by this court that objections of this kind could not be considered in the absence of an avowal, that we deem it unnecessary to further comment on this ground, or to refer to the opinions so declaring, and for which reason alone it must be held that this ground is unavailable.

■ The only argument in support of ground 4 is, that the court did not say in the self-defense instruction that defendant was excusable if he shot and killed the deceased in the necessary defense of his brother, Alex Turner, who was with him on that night at the home of deceased and departed with him when he left it. The trouble with this argument is that there are no facts disclosed by the record to support it. It is a universal rule that instructions should be confined to issues upon which testimony was given during the trial. Of course, if there was evidence tending to show that both defendant and his brother were in danger, or to the defendant's reasonably apparent danger, of death or great bodily harm at the hand of deceased, the right of the latter to kill on the ground of self-defense would also include the

protection of his brother against such danger, and which is a principle of criminal practice everywhere recognized and applied. But this record is barren of any testimony showing that defendant's brother was in any immediate danger at the hands of deceased, either actual or reasonably apparent, and defendant himself did not so testify. On the contrary, he said that he shot deceased because the latter at the time was about to, or threatened to, harm or kill him (defendant) with a knife, and to protect himself from such threatened danger he committed the homicide with which he is charged. We dealt with this concrete question under analogous facts in the case of Kindrick v. Commonwealth, 226 Ky. 144, 10 S. W. (2d) 639, and in the opinion in that case we pointed out that, unless the third person whom the defendant claimed the right to defend was himself in danger, actually or reasonably apparent, at the hands of the deceased, no right existed in the defendant to commit his crime for the alleged protection of such third person. Since the facts of this case are not similar to those in the cases cited and relied on in support of this ground, it follows that the principles announced by them are not applicable and that this ground is also unavailable.

Lastly, we deem it not improper to say that the verdict is amply supported by the testimony, and for which reason, and the further one that it is not argued to the contrary, we deem it unnecessary to rehearse the testimony in detail. If defendant's most incredible account of the killing had been literally accepted by the jury as true, then he was justified and should be acquitted upon the ground of shooting in his necessary self-defense. But the account that he gave of the immediate happenings at the time he fired the fatal shots is so at variance with human experience and human conduct as to stamp it as manufactured. It is not in accord with the happenings immediately before the killing, or at the time when the parties departed from the residence of the deceased some minute or so before the shooting. His account is also at variance with the thoroughly proven belligerent attitude and conduct of himself while in the residence of deceased and immediately preceding his leaving there, and which, according to all witnesses except that of his brother, showed that he was bent on using his pistol that night to harm some one only because, according to the witnesses, his pistol "had killed four or five men and it was good for that many more."

A careful study of the record supports the conclusion that defendant has had a fair and impartial trial, and that the jury by the punishment inflicted dealt mildly with him. Wherefore the judgment is affirmed.