# Webster v. Commonwealth.

(Decided December 4, 1931.)

J. L. VALLANDINGHAM for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS VEST for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At his trial under an indictment charging him with seducing a female under 21 years of age under promise of marriage (as denounced by section 1214 of our present Statutes), the appellant and defendant below, Isaac Webster, was convicted in the Grant circuit court and punished by confinement in the penitentiary for two years. On this appeal by him after his motion for a new trial was overruled, his counsel argues three grounds for

a reversal of the judgment, which are: (1) That the verdict was and is flagrantly against the evidence, and exhibits passion and prejudice on the part of the jury; (2) error of the court in admitting incompetent evidence offered by the commonwealth; and (3) rejection of competent evidence offered by the defendant, each of which will be disposed of in the order named.

■ The alleged wronged female was Opal Kinman, who at the time of the charged seduction was only 14 years of age; while the defendant was about 22 or 23 years old and a close neighbor to Miss Kinman, the latter of whom was an orphan. She testified and he admitted that he commenced his attentions toward her some time in the summer of 1928, and she says that thereafter they became engaged to marry and had set a date for the wedding some time in April, 1929; that along about the first of December, 1928, defendant persuaded her to commit the act with which he was charged (because of their engagement), and that she eventually but reluctantly consented and that it was repeated several times thereafter. She became pregnant and gave birth to a child in January, 1930; but a short while before its birth a warrant was issued for defendant charging him with the offense, and on the 18th of January he consented to and did marry his alleged victim, and then immediately left her and has never lived or cohabited with her as his wife. He was later indicted and tried, with the result hereinbefore stated. He, in his testimony, admitted his attentions to and associations with Miss Kinman, but denied the seduction with which he was charged and also denied any promise to marry her. He and another witness or two testified to some occasions where the prosecuting witness was engaged in most unbecoming and unchaste conduct with other young men; but she denied each of the acts so testified to, and none of the men with whom she was alleged to be so engaged appeared at the trial or testified in the case.

Defendant also testified, and was fortified by a number of witnesses, that about the first day of December, 1928, he was stricken with an ailment that confined him to his bed until some time in January or February, 1929, when for the first time after being stricken he was enabled to leave his father's home at which he was residing, and it is, therefore, argued that because of the quantum of evidence on that point the testimony of the

prosecuting witness as to the first time she was seduced by defendant is overwhelmingly disproven. However, three witnesses testified to the fact that just before Christmas of 1928 defendant attended a social gathering at one of his neighbor's residence and on that occasion he got into a fight with one Simpson, who struck him a considerable blow upon one of his ears, which produced the affliction with which he was later confined. If that evidence was believed by the jury, then it removed all contradiction of Miss Kinman as to the time for the first seduction of her by defendant, except that of his own testimony. Moreover, the question was not so much as to the precise date when the seduction occurred, since the vital fact was, and is, whether it occurred at all before the finding of the indictment and at such a time as would subject defendant to prosecution therefor. Miss Kinman may have been mistaken and the first violation of the statute, if committed at all, may have happened in November, 1928, instead of December as she testified. At any rate, the evidence on that issue was of such a nature as to authorize the jury to disbelieve defendant and his witnesses as to the period covering his confinement in his home, and to believe prosecutrix and the other witnesses for the commonwealth who testified concerning it. Especially is that true in the light of the fact that the great majority of defendant's witnesses so testifying and corroborating him were his immediate relatives, and the testimony of some of them was greatly weakened and shaken by other testimony introduced by the commonwealth and by their cross-examination.

Defendant also testified, not only that he was not the father of the child that was later born to his alleged victim, but that it was physically impossible for him to have begotten it because he was absent from that community and in the city of Detroit, Mich., from the 22d day of March, 1929, until the 29th day of June in the same year and during which the child was necessarily begotten, according to the laws of nature. But the evidence on that phase of the case (and especially as to the precise dates of defendant's departure and return from Detroit) is not overwhelmingly convincing. One curious fact appears in the record, and which is that every witness who testified upon that issue in parrot-like form said that defendant's departure from home to go to Detroit was on the 22d day of March and in like manner they testified to the exact date of his return.

But, after all, defendant is not being prosecuted for becoming the father of Miss Kinman's child, but for his effort to beget her a child and to thereby subject himself to the charge of being its father. The gravamen of the offense is the unlawful seduction of a female within the prescribed age under a promise of marrying her.

Her testimony on all of the material facts was most intelligent and uncontradicted except by defendant alone, and it, supplemented as it was by the testimony of other witnesses for the commonwealth, plus some proven facts and circumstances in the case, renders the verdict free from the charge of being returned under the influence of passion and prejudice on the part of the jury, and for which reason it cannot be said to be flagrantly against the evidence.

■ The only argument advanced in support of ground 2 is the alleged error of the court in permitting two witnesses to testify for the commonwealth in rebuttal only because they had been in the courthouse during some of the time of trial and heard the testimony of some of the witnesses who testified in the case, chiefly those for defendant, while endeavoring to corroborate him as to the time of his confinement at home with his physical affliction. Those two witnesses testified to defendant being at a party given by a neighbor just before Christmas, 1928, and in which he became involved in a fight with one Simpson and, of course, that testimony was of such a nature as that the commonwealth could not anticipate the necessity of it until after the defendant and his witnesses had so testified. Their testimony was not in corroboration of any other witness who testified in the case, but was directed to a collateral fact which, if true, disproved some of the testimony of defendant's witnesses. The rule had been invoked at the beginning of the trial, and because the two witnesses referred to were put under it, and remained a portion of the time of the trial in the courthouse, it is said that their testimony should not have been received and that it was prejudicial error to do so.

But we do not agree with that contention. In the very recent case of Turner v. Commonwealth, 240 Ky. 536, 42 S. W. (2d) 716, decided October 16, 1931, we held that our practice with reference to the excluding of witnesses from hearing the testimony of others at a trial was one that was largely addressed to the sound discretion of the court, and that a reversal would not be ordered

for the admission of testimony of witnesses that had not been so excluded, unless under all the facts of the case such sound discretion had been violated to the clear prejudice of the defendant. Prior cases to the same effect are Music v. Commonwealth, 186 Ky. 45, 216 S. W. 116, and Render v. Commonwealth, 206 Ky. 1, 266 S. W. 914. Under the rule as so announced and approved, it, clearly, cannot be said that the court abused a sound discretion in permitting the two witnesses complained of to give their testimony in rebuttal, and this ground is disallowed as being without merit.

■ The only evidence offered by defendant, and which the court rejected, that is complained of under ground 3, was an effort to prove by defendant himself some unexplained message that the county judge sent to him (defendant) by some unnamed messenger with reference to his marrying Miss Kinman. Presumptively it was the purpose of that testimony to develop an excuse, or at least an incentive, for defendant to so agree and to perform that agreement. But whether so or not is a mere matter of conjecture, since no avowal was put into the record as to what the message was and for that reason alone this ground cannot be considered. It was so determined in the Turner case, supra, and which followed an unbroken line of prior opinions of ours, one of the most recent of which is Davidson v. Commonwealth, 214 Ky. 205, 282 S. W. 1090. However, if there had been an avowal and it had developed that the county judge in his purported message to defendant had urgently recommended the marriage, it still would have been incompetent, because the county judge is not the one to determine the course to be pursued in such a matter, and it was also incompetent because the proper person to have verified the message was the county judge, who, though introduced in the case as a witness, was not interrogated on that subject. The attempt to verify it by the proven statements of the messenger by whom it was alleged to have been sent, would be, and was in this case, a clear violation of the rule forbidding hearsay testimony, and for which reasons this ground is also unavailable.

Before concluding the opinion, we deem it proper to say that we regard the testimony on the issues of seduction under promise of marriage amply sufficient to support the finding of the jury, but upon the issue of the prior moral character of the prosecutrix the testi-

mony is less convincing. However, we do not regard it as by any means conclusive of her immoral character. The witnesses who testified upon that issue were not asked as to her character for chastity, and which is the one, if bad, under our decisions, would relieve defendant from prosecution. But the inquiry at the trial was as to her "moral" character. She may have been immoral in one or more other respects than the most cherished one of all, that of chastity, but with it unassailed defendant would be guilty if he committed the other acts necessary thereto.

Upon the whole case we are not prepared to say that any of the grounds relied on for a reversal is sufficient to authorize us in doing so, and for which reason the judgment is affirmed.