## Green v. Commonwealth.

(Decided May 11, 1937.)

476

·CARL EVERSOLE and A. R. ERNBERG for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

Wallace Green (colored) was indicted and convicted in the Madison circuit court of the crime of rape and his punishment fixed at 20 years in the penitentiary. He appeals.

Numerous alleged errors are insisted on in brief of

appellant for reversal of the judgment, the first of which is that the indictment under which appellant was convicted does not state facts sufficient to constitute a public offense, in that it failed to allege that the defendant had intercourse with prosecutrix "against her will or consent." The indictment reads:

"The Grand Jury of Madison County, in the name and by the authority of the Commonwealth of Kentucky, accuse Wallace Green of the crime of Rape committed as follows:

"That said Wallace Green in the county aforesaid and before the finding of this indictment did unlawfully, wilfully, and feloniously and maliciously and forcibly have carnal knowledge of and sexual intercourse with Delora Robinson a female person over the age of twenty-one years and not his wife against the peace and dignity of the Commonwealth of Kentucky."

The indictment was drawn under section 1154, Kentucky Statutes, which reads as follows:

"Whoever shall unlawfully carnally know a female, of and above twelve years of age, against her will or consent, or by force, or whilst she is insensible, shall be guilty of rape, and punished by confinement in the penitentiary not less than ten nor more than twenty years or by death, in the discretion of the jury."

It will be seen that the statute, supra, provides that the offense defined therein may be committed in different modes or by different means. Section 126 of the Criminal Code of Practice provides that, while the indictment must charge but one offense, yet, if it may have been committed in different modes and by different means, the indictment may allege the modes and means in the alternative.

In May v. Com., 153 Ky. 141, 154 S. W. 1074, it is held that an indictment may charge the commission of a crime in different modes and in several counts and under such an indictment the accused may be convicted upon evidence showing guilt under any of the counts.

Section 1154 of the Statutes, describes and defines the act of rape of a female of and above 12 years of age, and this section must not be confused with section

1152 which simply provides for the punishment of the common-law crime of rape when committed upon the body of an infant under 12 years of age, without an attempt to define it. Under the latter section an indictment should contain all the common-law elements necessary to the commission of the crime of rape as defined at common law. But when the Statute sets out and defines the manner in which an offense may be committed, as in section 1154, an indictment in the language of the Statute is sufficient to charge the offense as committed in any one or more of the modes and means charged.

In Deboe v. Com., 257 Ky. 792, 79 S. W. (2d) 236, 239, this court quoted from the case of Com. v. Lowe, 116 Ky. 335, 76 S. W. 119, 25 Ky. Law Rep. 534, as follows:

"In Commonwealth v. Lowe, 116 Ky. 335, 76 S. W. 119, 120, 25 Ky. Law Rep. 534, in the opinion the indictment is copied. It neither uses the word 'forcibly' nor the phrase 'and by the use of force,' as the latter appears in the present case. The trial court sustained a demurrer to the indictment. Its judgment was reversed for proceedings. The indictment in the present case charges but one crime. Under the statute, it may have been committed by different means. The indictment may allege the modes and means in the alternative. As was said in the Lowe Case, section 126 of the Criminal Code of Practice 'changes the common-law rule as to alternative allegations in an indictment as to the different modes and means which the accused may have resorted to in the commission of the offense charged. The indictment only charges the defendant with one offense—that of willfully and feloniously carnally knowing a female above the age of 12 years against her will and consent.' "

In the Deboe Case, supra, the word "force" was omitted from the indictment yet it was held good on the other points. See, also, Webb v. Com., 99 S. W. 909, 30 Ky. Law Rep. 841; Wilkey v. Com., 104 Ky. 325, 47 S. W. 219, 20 Ky. Law Rep. 578.

Under section 124 of the Criminal Code of Practice, an indictment is sufficient if the allegations are sufficient to advise the accused of the nature of the offense with which he is charged. The indictment in the pres-

ent case informed appellant that he was charged with having sexual intercourse with the prosecutrix "unlawfully," "willfully," "feloniously," "maliciously" and "forcibly." It follows that he could not have been prejudiced or misled in the preparation of his defense because the indictment merely failed to charge that the intercourse was against her will or consent. It may be conceded that the indictment is defective under the common-law rule, but, in view of our Statutes and Criminal Code of Practice cited above, we think, the indictment was sufficient.

Next it is insisted that the evidence was insufficient and that the court should have sustained appellant's motion to peremptorily instruct the jury to find him not guilty. It is insisted that prosecutrix did not recognize the appellant as being her assailant and that his identification was not proven. In the direct examination prosecutrix testified positively that appellant was the man who attacked her. However, on cross-examination she admitted that she testified on the examining trial that she was not positive that appellant was the man who attacked her, but said that he looked like the man and was of similar feature and size "and looked exactly like him." She was asked why she could not positively identify appellant on the examining trial but positive about it now, and she said there was other evidence developed since the examining trial that convinced her that appellant was her assailant, and she referred to that later evidence as being finger prints on a cigarette package found at the place where she was assaulted. It may be conceded that the finger prints on the cigarette package would have been no assistance to her in identifying appellant by sight, but on the examining trial she testified that appellant, who was present in court, was the exact size and feature of her assailant and gave it as her opinion that he was the person who attacked her although she was not absolutely positive.

Prosecutrix testified that she was going along on Altamount street in the city of Richmond and, while in the dark or shadow of a warehouse, she noticed a man on the opposite side of the street and he started across the street toward her "staggering like someone drunk" and when he overtook her he grabbed her with his hand around her neck and threw her over next to the warehouse under or near the porch or platform in the weeds.

She said she could not hollow. She said that she was afraid he would kill her and pretended that she was dead and he proceeded to and did have intercourse with her. She described his clothing and general appearance and said that he was the same negro that followed her down the street once before that time.

There was an empty cigarette package found in the weeds at or near the place where prosecutrix was assaulted, and the sheriff delivered it to Hugh Coffee of Winchester, Ky., for finger print examination. The introduction of the evidence relating to the finger prints is also objected to. It is not disputed that the cigarette package from which the finger prints were taken was the same package found at the scene of the crime. The objection offered is that Coffee did not qualify as a finger print expert or show sufficient qualifications in that line. Mr. Coffee testified that he lived in Winchester, Ky., for 6 years and that his vocation was that of finger print expert in which line he had had 9 years' experience; that he had been engaged in this work 6 years in Winchester and had been employed by the United States Government Civil Authorities, the Chesapeake & Ohio Railroad Company for 2 years, and had instructions under the supervision of a crime detective bureau in Detroit, Mich., which was under the supervision of H. C. Cook, a known authority on finger printing, and that he had had instructions "off and on" for 2 1-2 years at Northwestern University in Chicago, where he was sent by the crime detective bureau in Detroit, Mich. He had also had experience with the bureau in Lexington police department. He testified that he made the test for finger prints on the cigarette package and also on the hands of appellant and they were the same. Appellant denied that he attacked the prosecutrix and claimed that he was not on that street or at the place where she was attacked at the time of night and attempted to prove an alibi in which he was corroborated to some extent by various witnesses most of whom were of his own race. Prosecutrix claimed that she was attacked between 8:30 and 9 o'clock but was unable to fix the exact time, and it appears from the evidence of some of the witnesses for appellant that he was at another place a short distance away, approximately at that time. But none of the witnesses fixes the time so definitely as to render it impossible for appellant to have been at the

place. where prosecutrix was attacked between 8:30 and 9 o'clock. The evidence being conflicting it presented a question for the jury and we think it not only sufficient to take the case to the jury but also sufficient to sustain the verdict. Previous to the trial, appellant took the depositions of one Leonard Keeler of Northwestern University, who testified that he did not know the witness Coffee and that the records of that school did not disclose that he was ever a student of that university.

The court refused to permit appellant to read the depositions and much complaint is made of that ruling of the court. The depositions are in the record and the substance of them is that Mr. Coffee's name does not appear of record as having been a student of that university. But as we have stated above, Mr. Coffee testified that he did not enroll as a student or engage actively in classwork, but that he had conversed with the professors of that university on the subject of crime detection including finger printing. Mr. Coffee not having claimed that he was enrolled as a student of that university it follows that the depositions offered would not have contradicted his evidence in that respect. We do not think the rejection of these depositions was prejudicial.

But Coffee did not testify that he had studied personally at the college at all, but he had been there several times and talked with and received instructions from the professors of that college who taught crime detection work, including finger printing. He said that he had a certificate at his home from H. C. Cook saying that he was a qualified finger print expert. This evidence was not objected to nor was there any motion made for him to file his certificate. In view of the training and experience Coffee has had in the work, according to his undisputed testimony, we do not think that the court abused a sound discretion or erred in permitting his evidence to go to the jury. The jury had the details relating to his qualifications and experience in that work and it had the right to give it such weight and credibility as it saw proper.

Another objection urged to the finger print evidence is that Mr. Coffee did not personally make the photographs used in the development of the finger prints. But he testified that the pictures were made

and developed under his supervision and in his pres-
ence, by L. A. Nevews, a Winchester photographer. He
said he did not have the proper equipment and he got
Mr. Nevews to do the work for him. The work having
been done in the presence of Coffee and under his super-
vision, we think it is immaterial that he did not do the
photographing of it personally. He supervised the
taking of the pictures and developed the finger prints
therefrom. We do not think this ground of complaint
is well taken.

Appellant was asked on cross-examination if he
had been convicted of previous felonies, which he ad-
mitted, to which the appellant objected, and the court
did not rule on the objections at that time but later sus-
tained the objections and admonished the jury to con-
sider that evidence only as affecting his credibility, if
it did so, and for no other purpose.

The jury had the benefit of the court's admonition
and it is not reasonable to presume that it would have
had any different effect had it been given immediately
instead of at a later time during the trial.

It is next insisted that the court failed to instruct
the jury on the whole law of the case, in that the in-
structions failed to contain the words ''against her will
or consent'' which quoted language did not appear in
the indictment. The instructions given by the court
are in the exact language of the indictment, and the
indictment being sufficient, it follows that the instruc-
tions were proper.

Finding no error prejudicial to the appellant's sub-
stantial rights, the judgment is affirmed.