James Robert STAGGS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 93–SC–006–DG.

Supreme Court of Kentucky.

Nov. 24, 1993.

As Modified on Denial of Rehearing
June 23, 1994.

Scott A. Wilson, Louisville, for appellant.

Chris Gorman, Atty. Gen., Dina Abby Jones, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

COMBS, Justice.

James Robert Staggs was convicted of sexual abuse in the first degree, and sentenced to five years' imprisonment. The Court of Appeals affirmed. We granted discretionary review, and reverse.

The single issue on review is whether the trial court committed prejudicial error in admitting into evidence, over objection, the testimony of Sandra Graves, Ph.D., acknowledged by the defense as an expert in the field of art therapy.

The alleged victim, R.S., had been enrolled in an art therapy group for children of alcoholics. The child rendered a drawing depicting his family, which drawing caused concern to the therapist, who referred the matter to authorities for investigation. During the ensuing investigation, the child and his brother alleged that their father, Staggs, had committed sexual acts against them. Staggs was indicted for both sodomy and sexual abuse of R.S., and for sexual abuse of the other child. Both children testified against him at trial. He was convicted of sexual abuse of R.S., and acquitted of the other charges.

The drawing was admitted into evidence during R.S.'s testimony. The drawing was also presented to Dr. Graves, who, after being qualified as an expert, testified at considerable length concerning the drawing and its

message. The defense objected to permitting testimony interpreting the drawing, but was overruled. Dr. Graves explained that art therapy is a "specialized form of psychotherapy" in which the subject might express graphically, often subconsciously, thoughts or emotions which are not expressed verbally due to repression or prohibition. She averred that art therapy is a technique generally recognized in the mental health field.

As for the scientific method of art therapy, Dr. Graves testified that certain graphical traits—distinctive use of line, form, color, content, etc.—are normal among persons of a given developmental stage. Drawings exhibiting deviations from the norm—unusual details, pressure, scenes, scale, shading or coloring—are alarming and may indicate that the person has been subjected to sexual abuse or other trauma. Dr. Graves illustrated with a number of examples—drawings rendered by children at the same developmental stage, the "normal" ones, she said, having been drawn by children who had not been sexually abused, the "abnormal" ones, she said, having been made by victims of sexual abuse. The trial court sustained a defense objection that there was no competent evidence to show that the children doing "abnormal" pieces had in fact been sexually abused. (There was no objection, except possibly by inference, that there was likewise no evidence that the "normal" control group—if it was a control group—had *not* been sexually abused.) Nonetheless, and without further objection, Dr. Graves persisted in presenting her examples in terms of abnormal drawings by sexually abused children.

Turning to the family drawing made by R.S., Dr. Graves pointed out a number of perceived deviations: the father was depicted as having "special importance," being of greater size and fuller in form than the stick figures representing the other members of the family; the genital area of the father was heavily shaded; the caption "Dad" was written in the area of the penis; the children were positioned between the father and the mother, R.S. being next to the father; and an odd line appeared across the father's torso. These deviations, Dr. Graves said, "lead me to believe that this child has been engaged in . . . sexual abuse."

On cross-examination, however, Dr. Graves stated that she could "never ethically tell from one drawing" whether sexual abuse had occurred. Contradictorily, she added that she was "relatively certain" that it had occurred. She stated that she "would have to ask the child" about certain features of the drawing before reaching a conclusion, but admitted that she had never talked with the child. At another point, she stated that the drawing would lead her to recommend that the matter be investigated further.

While not challenging Dr. Graves's expertise, the appellant maintains that there was no sufficient showing that art therapy itself is generally accepted in the medical community as a reliable tool in diagnosing sexual abuse. He further contends that the sample drawings used by Dr. Graves are irrelevant and hearsay; and further that Dr. Graves's testimony improperly embraced an ultimate issue of fact, and moreover that its probative value was outweighed by its unfairly prejudicial effect.

This matter arose and was tried prior to the effective date of the Kentucky Rules of Evidence. We therefore are not called to interpret KRE 702. On the question of the acceptance of art therapy as a reliable scientific technique applicable to an issue in this case, our pre-KRE rule is that enunciated in the decision of *Frye v. United States*, 293 F. 1013 (D.C.Circuit 1923):

> [W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

*Id.* at 1014. We have also said:

> The party offering the evidence has the burden of proving that this new evidence has gained general acceptance as reliable in the relevant scientific community.

*Harris v. Commonwealth,* Ky., 846 S.W.2d 678 (1993).

While we have no reason to doubt Dr. Graves's integrity or sincerity, we do not find

her testimony that art therapy is "a generally recognized therapy technique in the mental health field" sufficient to establish that it is generally accepted as reliable for the purpose for which it was used in this case. It is only natural that art therapists themselves firmly believe in the validity and reliability of the discipline. Particularly in view of the recentness of its appearance in the courtroom, we believe it is appropriate to require some evidence from the larger scientific community to establish not only that the technique is generally accepted, but that it is accepted as reliable for the purpose for which it is intended to be used at trial. In *Frye*, for example the court did not inquire whether polygraph practitioners found the method generally accepted, but rather whether "physiological and psychological authorities" recognized it as valid. Similarly, in our recent case of *Harris, supra*, evidence of DNA analysis was held admissible where *both* a DNA analyst *and* a geneticist recognized as an expert in molecular biology and population genetics testified regarding the methodology, accuracy, and acceptance of the technique.

It is also incumbent upon the Commonwealth, when offering expert opinion on a matter of scientific knowledge, to establish that the tests or analyses conducted in the present case conformed to the accepted methodology of the science. With respect to Dr. Graves's sample drawings, specifically, there was indeed, as the trial court ruled, no competent evidence to demonstrate that the children who had drawn the "abnormal" samples had in fact been sexually abused; there was moreover no evidence that the "normal" population had *not* been sexually abused, and no evidence of the size of the population from which the samples had been selected, or the manner of selection. *Cf. Lantrip v. Commonwealth*, Ky., 713 S.W.2d 816 (1986).

The issue in the instant case is not that art therapy cannot qualify as a scientific method for diagnosing sex abuse. The problem is that Dr. Graves admitted that the technique used in this case (only one drawing and no interview) did *not* comply with the acknowledged method for applying this science. The result reached in the trial court was to permit admittedly unscientific testing to be used to infer that sexual abuse had occurred by permitting Dr. Graves to so testify based on evidence from the drawing.

Even assuming that there exists general acceptance and a recognized scientific methodology of art therapy, reliable as relevant to an issue being tried, it is apparent that such methodology was not followed in this case. In essence, Dr. Graves's opinion was not an expert opinion but a personal opinion. As such, it was not only far more prejudicial than probative, but it rendered Dr. Graves's entire forty-five minutes of testimony irrelevant. Her testimony did nothing to aid the jury in understanding the evidence or resolving the issues and was not in conformity with the criteria for admissibility of expert testimony.

At the present time, art therapy has not achieved status as a recognized science for diagnostic purposes in child sexual abuse cases. We do not hold, however, that testimony respecting art therapy is inadmissible as a matter of law—nor that it will fail to achieve general acceptance in the future in such cases. We simply hold that in this case, the Commonwealth failed to establish the necessary predicate of foundation, reliability, and relevance.

We announce not a rule but an anticipation and aspiration that a means will arise to afford a needed avenue of relief and communication for the helpless victims of child sexual abuse. Art therapy may perhaps become that scientifically accepted standard to provide a vehicle by which those locked in the psychological shackles of fear and bound in shamed silence may be enabled to express the truth of their victimization in order to redress the crimes against their innocence with all due care preserved for the rights of the accused.

The conviction is reversed, the sentence is vacated, and the matter is remanded to the Jefferson Circuit Court for further proceedings consistent with this opinion.

STEPHENS, C.J., and LAMBERT, LEIBSON, REYNOLDS and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., files a separate concurring opinion, in which REYNOLDS, J., joins.

SPAIN, J., concurs in result only.

STEPHENS, Chief Justice, concurring.

I concur with the majority opinion that the decision of the Court of Appeals requires reversal. As the majority clearly states, there is no doubt that the testimony of the art therapy "expert" in this case was both improper and prejudicial to appellant. This is true independently of the fact that Dr. Graves admittedly failed to adhere to the methodology she testified would be necessary in order for an art therapist to reach a reliable conclusion.

I write separately to emphasize the importance of a trial judge's duty to scrupulously observe the familiar principles that set forth the standard against which a novel scientific discipline is to be measured before it is properly admissible as the subject of expert testimony.

This Court has long recognized the dictates of *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), which place on the proponent the burden of clearly establishing that a discipline has gained in the scientific community "general acceptance in the particular field in which it belongs." *Id.* at 1014.[1] In *Harris v. Commonwealth,* we reiterated the absolute necessity of such proof, and categorically stated that this Court is unwilling to embrace the sole testimony of an offering party's expert as conclusive of the matter. *Id.* at 681. In the present case the burden of establishing the validity and reliability (and therefore, the *relevancy* ) of art therapy was in no way met.

The testimony of Dr. Graves was also highly prejudicial to appellant. By allowing Dr. Graves to state her opinion that R.S. was sexually abused by his father, the trial court not only improperly admitted expert testimony as to ultimate facts in issue, but in so doing placed the imprimatur of the court's authority on her conclusions. Her testimony

had the effect, therefore, of invading the exclusive province of the jury on the questions of whether sexual abuse had occurred, and moreover, whether the defendant was responsible for such alleged abuse. Because of the "aura of special reliability and trustworthiness" that surrounds expert testimony in the eyes of a jury, especially in a criminal context, the appellant here was substantially and unfairly disadvantaged. *Hester v. Commonwealth,* Ky., 734 S.W.2d 457 (1987) (quoting *State v. Logue,* 372 N.W.2d 151 (S.D. 1985)).

REYNOLDS, J., joins this concurring opinion.

---

1. *See, e.g., See v. Commonwealth,* Ky., 746 S.W.2d 401 (1988) (HLA genetic marker paternity test); *Commonwealth v. Rose,* Ky., 725 S.W.2d 588 (1987) (battered wife syndrome); *Honeycutt v. Commonwealth,* Ky., 408 S.W.2d 421 (1966) (radar); and *Shelton v. Commonwealth,* 280 Ky. 733, 134 S.W.2d 653 (1940) (fingerprints).