**William Eugene THOMPSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 87–SC–239–MR.

Supreme Court of Kentucky.

Sept. 30, 1993.

As Amended Oct. 1, 1993.

Oleh R. Tustaniwsky, Donna L. Boyce, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., David A. Sexton, Carol C. Ullerich, Asst. Attys. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

This is a direct appeal from the judgment of the Lyon Circuit Court which sentenced the appellant, William Eugene Thompson, to death following a conviction of murder. He also received consecutive terms of twenty years for first degree robbery and ten years for first degree escape.

### *FACTS*

Appellant had been convicted of murder, in 1974, in Pike County and was serving time therefor. Prior to the incident which led to the indictment, conviction and this appeal, appellant had been transferred from the Kentucky State Reformatory to the Western Kentucky Farm Center in Lyon County. He had been assigned to daily duties at the dairy, and had been working there about five weeks before the homicide. His supervisor, who later became his victim, was Fred Cash.

On the morning of the crime, May 9, 1986, appellant was picked up to go to work by Cash between 4:00 and 4:30 a.m. The evidence shows that, although it was a warm day, appellant wore street clothes under his normal prison work garb, and he wore brown suede shoes rather than regulation work boots. He concealed a razor in his pocket and procured both an extra jacket and eye glasses, which he did not need. After arriving at the farm, Cash directed appellant to help him start a tractor by pulling it with the prison van. When appellant had difficulty with hooking the chain to the van, Cash took the chain away and hooked it to the van himself. He told appellant that it should not be that difficult to hook the chain to the van.

Appellant took the statement as criticism. His eyes welled up with tears. He immediately picked up a hammer and struck Cash in the head, as Cash was kneeling. Appellant admitted to striking Cash one time, but a pathologist testified that Cash suffered

twelve hammer blows, all to the head. Appellant then pulled Cash's body into a stall in a nearby barn, where he further bludgeoned Cash. Appellant then searched the body and removed Cash's keys, wallet and knife. He then took the dairy van and drove to Princeton, where, in a gas station, he shaved his mustache and goatee and changed his hairstyle. Appellant had previously divested himself of his prison clothes. He bought a bus ticket to Indianapolis, Indiana. When the bus stopped at Madisonville, an interim stop, appellant was arrested.

Appellant expressed his desire to plead guilty, and wanted to accept the death penalty. No formal guilty plea was entered, however, and over a month before the trial, appellant began to cooperate with his counsel. Although he did not testify at the guilt phase of his trial, he did testify at the penalty phase. With the exception of the multiple blows, appellant admitted virtually all of the other events leading up to and including the murder. At closing argument, appellant's counsel admitted to the jury that appellant killed Cash, rifled his corpse for valuables and escaped custody in the farm vehicle. Other facts will be addressed as is appropriate to the appellant's arguments discussed herein.

Although appellant raises thirty-six alleged errors in his brief, we will discuss only six of those issues. We have carefully considered all issues raised, and find the other thirty have no merit.

### CONTENTIONS

The arguments we have chosen to discuss are: (1) Was it error for the trial court to deny appellant's motion for a change of venue; (2) Was it error for the trial court to restrict voir dire examination; (3) Was it error for the trial court to fail to excuse, for cause, certain members of the jury panel; (4) Was it error for the trial court to refuse to instruct the jury on theft and second degree escape; (5) Was it error for the trial court to refuse to give a definition of extreme emotional disturbance; and (6) Was it error for the trial court to admit, as an aggravating circumstance, evidence of appellant's murder

conviction which was in the process of being appealed.

### I. WAS IT ERROR FOR THE TRIAL COURT TO DENY A CHANGE OF VENUE?

The trial of this case had been set for several months to begin on October 8, 1986. On October 6, 1986, two days before the trial, appellant filed a verified "Petition for Change of Venue." KRS 452.210. Filed with the petition and requisite affidavits was an extensive array of newspaper articles, transcripts of local radio broadcasts concerning this case and a copy of a letter to the editor in a local paper, signed by 150 local residents, which referred to the Pike County conviction.

On October 7, 1986, one day before the trial, appellant filed the results of a sampling type public opinion poll of jury eligible citizens of Lyon County. Basically, it showed that a high percentage of Lyon County citizens knew about the case (94%), thought that appellant was guilty (44%), and preferred the death penalty for appellant (52%). The Commonwealth, caught short because of the very late notice, filed four citizen affidavits which, in effect, opined that appellant could receive a fair trial in Lyon County.

A hearing before the trial judge was held on October 8, 1986. The issue of the lack of reasonable notice of the filing of the petition was raised at the hearing, by the prosecution. The trial court denied the petition for the sole reason that reasonable notice of the motion was not given, as is required by KRS 452.220(2). The trial court did not reach the merits of the petition. Interestingly enough, in subsequently denying appellant's motion for a new trial, the judge stated that "one of the few motions filed by the defendant in this case that *may have had merit was a motion for change of venue."* (Emphasis added.)

A majority of this Court believes the narrow ruling of the trial judge was correct. Although KRS 452.220(2) does not define "reasonable," we have said, in *Shelton v. Commonwealth,* 280 Ky. 733, 134 S.W.2d 653 (1939) that it was not error to deny a motion for a change of venue filed on the day of the trial. See also *Russell v. Commonwealth,* Ky., 405 S.W.2d 683 (1966). The majority of

this Court feels that the delay in filing the motion was due solely to appellant's own actions, and following *Miller v. Watts,* Ky., 436 S.W.2d 515, 518 (1969) that "unwarranted delay in making the motion amounts to a waiver of the right to seek a change of venue." The majority believes that appellant was aware of the pre-trial publicity, the feelings of the community about the case, and that such a delay constituted a waiver of the right to file a petition two days before the trial.

Moreover, it is a fundamental proposition of law that this Court will not overrule the decision of a trial judge in these matters unless it is shown that the trial court abused its discretion. *Kordenbrock v. Commonwealth,* Ky., 700 S.W.2d 384 (1985). *Grooms v. Commonwealth,* Ky., 756 S.W.2d 131 (1988). Under the facts of this case, no such abuse of discretion has been shown, and therefore, on this point the judgment is affirmed.

## II. WAS THE TRIAL COURT IN ERROR IN RESTRICTING INDIVIDUAL VOIR DIRE?

In the case of *Grooms v. Commonwealth,* Ky., 756 S.W.2d 131 (1988), which arose from the same circuit court as the case *sub judice,* this Court described the issue of the right of counsel to conduct individual voir dire examination. We said:

> We do not hold that counsel for appellant had any absolute right to question prospective jurors ... because the extent of direct questioning by counsel during voir dire is a matter within the discretion of the trial court. *Grooms* at 134.

■ In relation to the questioning of jurors, in the presence of other jurors, as to what a prospective juror has heard about the case, we have said that such questioning "poses the danger of bringing that information to the ears of the other prospective jurors. The *better* procedure is to question jurors separately and out of the presence of each other on *such matters.*" *Id.* (Emphasis added.) In other words, the ultimate question of whether individual voir dire is to be conducted is within the discretion of the trial court. However, in this case, where the

prior knowledge of the case is the subject matter, the "better practice" is for the line of questioning to be conducted outside of the presence of other jurors (whether conducted by the court or by counsel). *Grooms* was decided following the trial of this case.

■ The first twenty-five venirepersons were questioned as a group, and then by individual counsel. It is a fair statement that most of the individual voir dire inquiries covered capital punishment and pre-trial publicity. The trial court—in advance—precluded counsel from asking what kind of evidence or crimes would justify a death penalty, as well as, under what circumstances a sentence less than death would be appropriate.

Following the exhaustion of the first panel, the trial court, apparently impatient at appellant's counsel's questioning on the two restricted issues, ruled that the next fifteen venirepersons could not be *individually examined* about pretrial publicity on the death penalty. The trial judge, himself, questioned that venire about the issues. The court explained that this change of procedure was "out of convenience to the jurors" and because he believed counsel were asking inappropriate questions.

While we have some questions about the reason given by the trial court for changing horses in the middle of the stream, it is clear that the court adequately questioned the second venire about pre-trial publicity and about their view on the death penalty. That fact, coupled with our familiar rule that the conduct of individual voir dire is within the sound discretion of the trial court, leads us to conclude that there was no error here. We suggest, on any retrial, that the voir dire be conducted following what we consider to be the "better practice."

## III. WAS IT ERROR FOR THE TRIAL COURT TO REFUSE TO EXCUSE CERTAIN MEMBERS OF THE JURY PANEL FOR CAUSE?

■ The question of whether a juror should be excused for cause is a matter within the sound discretion of the trial court. If the trial court abuses its discretion by improperly failing to sustain a challenge for

cause, we have held it reversible error. If the defendant peremptorily excuses that juror, the defendant is thereby prevented from using a peremptory challenge to another juror. *Grooms, supra; Marsch v. Commonwealth,* Ky., 743 S.W.2d 830 (1988); *Rigsby v. Commonwealth,* Ky., 495 S.W.2d 795 (1973), *overruled on other grounds by, Pendleton v. Commonwealth,* Ky., 685 S.W.2d 549 (1985). With these principles to guide us, we shall examine the various challenged jurors.

■ Venireman Virgil Peek knew both the Commonwealth Attorney and the chief investigating officer in the crime. While he stated that he was in favor of the death penalty, he would limit it to if the proof is beyond the shadow of a doubt. However, he stated, and reiterated several times that he was a strong believer in the "eye for an eye" theory. His final view on the imposition of the death penalty is obvious, as expressed by his own statement:

> ... but I believe that a person should be— should receive what he has accomplished. In other words, we've got them over there at the penitentiary that has killed people, you know. Alright, you put them in there and they stay ten years, and turn them right back out, and they commit the same things again. You understand? When do we ever learn?

Goldia Parrish was related to a prison employee and knew many other employees of the prison. She had detailed knowledge of the facts of the case, including the fact that appellant was incarcerated due to a prior murder he had committed. She stated "I think he might be guilty." Also she believed that whoever killed Mr. Cash "should have the penalty." She also stated she would not consider mitigating evidence such as background, poverty, alcoholism, etc. Appellant's challenge for cause was denied and Parrish was struck by a peremptory challenge.

V.T. Holt initially claimed that he knew nothing about the case and had never discussed it. Following extreme questioning by appellant's counsel, he admitted he had signed a letter to the editor of the local paper which, among other things said:

> ... the man accused of murdering Fred Cash was not simply a murderer, but a

murderer for hire, yet he was classified as eligible for the Farm Center, a minimum security institution.

> He and two others were convicted of killing a man's wife by shooting, stabbing and beating her to death for a sum of money. This alone proves his regard for human life, yet he was at the Farm Center!

A challenge for cause was denied and this man actually sat on the jury.

Betty Guess knew and was related to several prison employees. She had business dealings with the prosecution. She discussed the case with a relative of the victim. She assumed appellant was guilty and was uncertain if she would consider mitigating evidence.

Hylan Galusha was a friend of the chief investigating officer and two of his best friends and his two brothers worked at the prison. He discussed this case with his two brothers. A challenge for cause was denied and he also sat on the jury.

Appellant exhausted his peremptory challenges on jurors he had challenged for cause. He also challenged for cause, albeit unsuccessfully, six of the twelve jurors who sat on the case. If the action of the trial court in failing to grant a challenge for cause constitutes an abuse of discretion, the rule of *Marsch, Rigsby* and *Grooms* comes into play.

■ We will not belabor this opinion with the obvious, viz., that our law and our constitutions demand that a jury must be fair and impartial. The probability of bias or prejudice is determinative in ruling on a challenge for cause. *Pennington v. Commonwealth,* Ky., 316 S.W.2d 221 (1958).

It is clear that venirepersons Peek, Parrish, Holt, Guess, and Galusha had strong, pre-conceived notions about the guilt of appellant, based on knowledge from several sources. Some had a preconceived opinion about the severity of the punishment to be administered. It cannot be argued that each of the venirepersons was impartial. By their own words, they were not and could not be fair and impartial jurors.

For the trial court to deny each of the challenges for cause was a clear abuse of his

discretion and the case is reversed on this basis.

## IV. WAS IT ERROR FOR THE TRIAL COURT TO REFUSE TO INSTRUCT THE JURY ON THEFT AND SECOND DEGREE ESCAPE?

■ Appellant was charged with murder, first degree robbery, and first degree escape. Appellant tendered instructions to the trial court on theft by unlawful taking and second degree escape. Appellant argued that the instructions were proper because his defense was that the killing of Cash was not to effectuate a robbery or escape. Thus, a reasonable jury could doubt that defendant is guilty of first degree robbery and first degree escape, but could conclude that he is guilty of lesser offenses. The trial court rejected appellant's tendered instructions.

KRS 515.020(1) lists the elements of robbery in the first degree as:

A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

KRS 520.020(1) defines escape in the first degree as an escape "from custody or a detention facility by the use of force or threat of force against another person."

"It is well established, however, that if the evidence points only to the conclusion that the accused is guilty of but one offense, it is not necessary or proper to give instructions embracing lower degrees." *Cox v. Commonwealth*, Ky., 491 S.W.2d 834, 836 (1973).

As previously stated, appellant virtually admitted to murdering Cash and in closing argument appellant's counsel did admit that appellant killed Cash.

The murder of Cash certainly qualifies as a use of force, an element of first degree escape, and as a physical injury, an element of first degree robbery. As such, the jury could have concluded but one thing—appellant was guilty of all counts charged, or he was not guilty of the charges.

Instructions on theft and second degree escape were not warranted by the evidence presented. For this reason, a majority of this Court affirms as to this issue.

## V. WAS IT ERROR FOR THE TRIAL COURT TO REFUSE TO GIVE A DEFINITION OF EXTREME EMOTIONAL DISTURBANCE?

■ In the guilt-innocence phase of appellant's trial, the jury was instructed on the offense of murder and first degree manslaughter. Under the instruction for murder, the trial court basically parroted the murder statute, KRS 507.020, by stating that appellant would be guilty of murder if he killed Fred Cash "not while acting under the influence of extreme emotional disturbance for which there was a reasonable justification or excuse under the circumstances as he believed them to be." The manslaughter instruction instructed the jury to find appellant guilty of manslaughter in the first degree if the jury did not find appellant guilty of murder and the jury finds beyond a reasonable doubt that appellant "killed Charles Fred Cash" and "[t]hat he did so with the intention of causing Charles Fred Cash's death." Appellant asserts that he was entitled to an instruction defining the term "extreme emotional disturbance."

Before an instruction concerning extreme emotional disturbance is justified "there must be something in the evidence sufficient to raise a reasonable doubt whether the defendant is guilty of murder or manslaughter." *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 108 (1980), *overruled on other grounds by, Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981). An examination of the case before us reveals that the extent of appellant's emotions was that he felt "uneasy" and "upset" because he believed Cash was criticizing his work. In *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464, 468, 469 (1986), this Court defined extreme emotional disturbance as

a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes.

Appellant's being "upset" and "uneasy" does not constitute extreme emotional disturbance as defined in *McClellan*.

The Court reversed and remanded *McClellan* for several reasons. In *McClellan* we stated that in a subsequent trial the jury should be instructed as to a definition of extreme emotional disturbance. However, *McClellan* is distinguishable from the case presented before this Court today. In *McClellan* there was a significant issue as to whether McClellan was acting under an extreme emotional disturbance. In the instant case, there is no such issue. Appellant was said to be "uneasy" and "upset". No evidence was presented that his emotions ranged beyond upset and uneasy. Under this specific factual situation, a majority of the Court does not believe that an instruction defining extreme emotional disturbance was necessary.

## VI. WAS IT ERROR FOR THE TRIAL COURT TO ADMIT, AS AN AGGRAVATING CIRCUMSTANCE, EVIDENCE OF APPELLANT'S MURDER CONVICTION WHICH WAS IN THE PROCESS OF BEING APPEALED?

KRS 532.025(2)(a)(1) lists "a prior record of conviction for a capital offense" as an aggravating circumstance for which the death penalty may be imposed. During appellant's trial, the Commonwealth introduced evidence of this aggravator through the testimony of the Lyon Circuit Clerk. The clerk testified that he had certified records showing that appellant was convicted in Pike County, in 1974, of willful murder under KRS 435.010.[1]

Appellant argues that the conviction from Pike County was improperly used as an aggravator because the 1974 conviction was not

final. Appellant's trial for murder, robbery and escape was in 1986. In 1987, this Court stated that appellant's appeal from the Pike County willful murder conviction "has never been dismissed. It is still pending." *Thompson v. Commonwealth*, Ky., 736 S.W.2d 319, 321 (1987).

The language in KRS 532.025(2)(a)(1) refers to an aggravator as being a "prior record of conviction." It has long been held by Kentucky courts that a "conviction, which of course means the final judgment" cannot be relied upon as a conviction if an appeal is being taken because "an appeal in a criminal case suspends the judgment, and this does not become final until a termination of the appeal." *Foure v. Commonwealth*, 214 Ky. 620, 283 S.W. 958, 962 (1926). See also *Commonwealth v. Duvall*, Ky., 548 S.W.2d 832 (1977) (conviction that is being appealed is not final and cannot be used for impeachment purposes). More recently this Court has held that a prior conviction cannot be utilized under the truth-in-sentencing statute or the persistent felony offender statutes if an appeal is pending. *Melson v. Commonwealth*, Ky., 772 S.W.2d 631 (1989).

Because appellant's appeal of the 1974 conviction was pending, it was improper for it to be used as an aggravating circumstance in KRS 532.025. As to this issue, a majority of the Court reverses.

For the foregoing reasons this case is reversed and remanded for retrial in conformity with the opinion of this Court.

COMBS, LAMBERT, REYNOLDS, and SPAIN, JJ., concur.

STEPHENS, C.J., concurs in majority opinion with exception to Issue I and Issue II, and files a separate dissenting opinion with respect to Issue I and Issue II.

WINTERSHEIMER, J., files a separate dissenting opinion.

LEIBSON, J., not sitting.

---

1. Since 1974 KRS 435.010 has been repealed. "Murder" is currently classified under KRS 507.-020.

STEPHENS, Chief Justice, dissenting.

I respectfully dissent from the Opinion of the majority.

## I. WAS IT ERROR FOR THE TRIAL COURT TO DENY A CHANGE OF VENUE?

In reading the briefs and the appropriate part of the transcript in this case, I felt an overwhelming sense of *deja vu.* The atmosphere surrounding this case, the action (or lack of it) by the trial judge, the uncontroverted evidence of the attitude of the community as shown by the poll taken by appellant, to me, all raise the specter of the trial and conviction of Fred Grooms. *Grooms v. Commonwealth,* Ky., 756 S.W.2d 131 (1988).

I dissented in that case, and the reasons set forth, *Id.* at 142, 143, are identical, except for a numerical difference in the poll. I will not overburden this opinion by repeating that verbiage. I will simply refer to it and incorporate it, by reference, in this dissent.

The highly charged atmosphere of the potential jurors in this case is identical to that in *Grooms.* Ultimate fairness mandates a change of venue in this case as I believed it did in *Grooms.* On retrial, if the proof is the same, I would order a change of venue.

## II. WAS IT ERROR FOR THE TRIAL COURT TO REFUSE TO GIVE A DEFINITION OF EXTREME EMOTIONAL DISTURBANCE?

A definition of extreme emotional disturbance should have been given to the jury. Repeatedly, this Court has required such a definition.

In *McClellan v. Commonwealth,* Ky., 715 S.W.2d 464 (1986), this Court stated that

> [w]ithout some standard or definition a jury is left to speculate in a vacuum as to what circumstances might or might not constitute extreme emotional disturbance. Since the General Assembly did not define the term, it becomes necessary for the court to do so.

*McClellan* at 467. On retrial in *McClellan,* it was ordered that the jury "be instructed as to the definition of the state of mind which constitutes an extreme emotional disturbance." *Id.* at 469.

Three years later in *Dean v. Commonwealth,* Ky., 777 S.W.2d 900, 909 (1989), we stated that "[w]hether extreme emotional disturbance is used as an element of the murder, manslaughter, or mitigating circumstance instructions, the jury should be instructed as to its definition."

Two years after *Dean* we reiterated:

> there should have been a separate instruction on extreme emotional disturbance so that the jury could understand how to apply extreme emotional distress to differentiate the two intentional homicide crimes; intentional murder and manslaughter in the first degree.

*Holbrook v. Commonwealth,* Ky., 813 S.W.2d 811, 815 (1991). As in *Holbrook,* the jury in the case presently before the Court was entitled to a definition of extreme emotional disturbance so that they could properly differentiate between murder and first degree manslaughter.

For these reasons, on retrial I would require an instruction be given to the jury which defines extreme emotional disturbance.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because I do not believe the trial judge abused his discretion in refusing to strike several jurors for cause, and there was a sufficient aggravating circumstance to permit the punishment given in this case.

The majority opinion states that five members of the original jury panel had strong preconceived notions about the guilt of the defendant and the severity of punishment to be administered and were therefore not fair and impartial jurors.

It should be recognized that Juror Peek was struck by the defense and did not serve, and Juror Parrish did not serve. Juror Holt did serve, as did Juror Guess and Juror Galusha. My review of the record indicates no dissatisfaction with the decision of the trial judge to allow Jurors Holt and Guess to serve. Juror Galusha was not challenged. I can find no abuse of discretion on the part of the trial judge in accepting the jury.

None of the jurors were closely related to the corrections system as contemplated by *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985). None of the jurors could have been struck for cause pursuant to *Marsch, supra, Grooms, supra, Rigsby, supra,* or *Peters v. Commonwealth*, Ky. 505 S.W.2d 764 (1974).

This case reveals a common theme in regard to the level of awareness of most jury panel members. Generally, as well as in this case, most of those called for jury duty who actually read or heard about the particular crime involved have a very marginal ability to remember the true facts or even newspaper accounts of any details. Here, many of the prospective jurors said they did know the prosecutor when actually they only recognized his name and his capacity as an elected public official. A review of the views of the jurors about capital punishment does not disclose anything that would prevent or substantially impair the performance of their duty as jurors in accordance with the instruction of the court and their oath as jurors. *Cf. Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The answers given by the jurors in this case do not rise to the level that would require their being stricken as jurors, and consequently, there was no abuse of discretion by the trial judge in refusing to excuse them pursuant to the standards set out in *Marsch*.

As with many other aspects of the trial of any case, the decision as to whether a particular person should serve as a juror should primarily rest with the sound discretion of the trial judge.

Although there is a facial attractiveness to the argument that this first murder conviction which was still pending on appeal should not have been used in the sentencing phase, it is arguable as to prejudice under these circumstances. *Cf. Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969). K.R.S. 532.025(2)(a)(1) simply requires "a prior record of conviction." If the legislature had intended to allow only the use of convictions which had been affirmed on direct appeal, it could have so stated. Other states have concluded that the pendency of appeal or post-conviction proceedings does not eliminate the possibility of the use of a prior conviction in a death penalty sentencing hearing. *See Peterson v. Commonwealth,* 225 Va. 289, 302 S.E.2d 520 (1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176; *State v. Jordan,* 126 Ariz. 283, 614 P.2d 825, cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *Spaziano v. State,* Fla., 433 So.2d 508 (1983), affirmed, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), and *cf. State v. Pollard,* Ky., 735 S.W.2d 345 (1987).

Here the 1974 willful murder conviction was used because it was "essential that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983).

I believe it is open to serious question whether in this case the use of the earlier conviction as an aggravating factor was at all prejudicial. Here the jury determined that Thompson had committed the murder during the commission of first-degree robbery and that he was a prisoner who murdered a prison employee.

I would affirm the conviction.