Roger Lamont WHEELER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2001–SC–0444–MR.

Supreme Court of Kentucky.

Aug. 21, 2003.

As Modified on Denial of Rehearing
Dec. 18, 2003.

Daniel T. Goyette, Frank Wm. Heft, Jr., Office of the Jefferson District, Public Defender, Louisville, Counsel for Appellant.

A.B. Chandler III, Attorney General of Kentucky, Louis F. Mathias, Jr., Assistant Attorney General, Elizabeth A. Heilman, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

Roger Lamont Wheeler was convicted by a jury of the intentional murders of Nigel Malone and Nairobi Warfield. The

aggravating circumstance is that Wheeler's acts of killing were intentional and resulted in multiple deaths as described by KRS 532.025(2)(a)(6). Wheeler was sentenced to death on each conviction.

Wheeler raises 28 issues which we will discuss in the order in which they were presented in his original brief.

On October 2, 1997, Louisville police discovered the bodies of the victims in the apartment the victims shared. The male victim was found in a hallway near the bathroom. He had suffered nine stab wounds. Two stab wounds to the chest were considered the fatal wounds by the medical examiner. She described the crime scene as having blood spatters on the floor, walls, furniture and appliances. The medical examiner believed that the main struggle occurred in the kitchen and progressed to the hallway where the body of the male victim was found.

The female victim died as a result of manual strangulation. The medical examiner testified that she believed the struggle between the female and her assailant occurred in the bedroom where she was found. The female victim had multiple abrasions on the left side of her neck and lacerations with a bruise on her mouth and several bruises on her lips. Her body was found in a seated position, leaning against a bedroom wall. She was covered with a blanket or quilt and a scissors was protruding from her neck. The medical testimony determined that she had been stabbed with the scissors after she was already dead. During the autopsy, the medical examiner discovered that the female victim was pregnant.

There was blood on the floors and walls in nearly every room in the apartment. Numerous blood samples were also collected at the scene and were subject to laboratory testing. No fingerprints were found on the scissors.

Wheeler denied killing the two victims but he changed his story on several occasions. Originally, he denied ever being inside of the apartment on the night the murders occurred but then later admitted being in the apartment on that night. He claimed that Nigel Malone was already stabbed, but that he did not see Nairobi Warfield. He also asserts that the assailant was already inside the apartment and he and that person fought which was why he was wounded.

During the trial that began in February 2001, the trial judge instructed on one aggravating circumstance, intentional killings that resulted in multiple deaths. The trial judge also instructed on mitigating circumstances that Wheeler was under the influence of extreme emotional disturbance; that his capacity to appreciate the criminality of his actions or to conform his conduct to the requirements of the law was impaired as a result of intoxication and any other circumstances that the jury could consider as mitigating. We will now begin to consider the various arguments presented in the sequence provided by the brief of Wheeler.

### I. Jury Challenges

Wheeler first argues that erroneous rulings on challenges for cause denied him the full use of his peremptory challenges. He exercised all nine of the allotted peremptory strikes.

The question of whether a juror should be excused for cause is a matter within the sound discretion of the trial judge. *Thompson v. Commonwealth*, Ky., 862 S.W.2d 871 (1993); *Alexander v. Commonwealth*, Ky., 862 S.W.2d 856 (1993), *overruled on other grounds, Stringer v. Commonwealth*, Ky., 956 S.W.2d 883 (1997). Kentucky law requires that a jury must be fair and impartial and that the

probability of bias or prejudice is a determinative factor in ruling on a challenge for cause. *Thompson, supra; Pennington v. Commonwealth,* Ky., 316 S.W.2d 221 (1958).

■ *Mabe v. Commonwealth,* Ky., 884 S.W.2d 668 (1994), determined that a "per se disqualification" is not required simply because a juror does not immediately understand and embrace every legal concept presented during the general voir dire examination. The true test is whether, "after having heard all of the evidence, the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict." *Mabe, supra.*

■ In this case, the trial judge allowed counsel for both parties great latitude in questioning the persons summoned for jury duty. The question of whether the potential jurors had any preconceived opinions that would interfere with their impartiality was carefully explored. The trial judge properly refused to strike for cause jurors who could consider the minimum penalty of twenty years. She appropriately struck for cause those jurors that could not impose the death penalty. She also correctly excused one juror who demonstrated a financial hardship. The voir dire process was entirely proper and thoroughly examined the question of whether any prospective jurors were predisposed. There was no error and the rights of the defendant to a fair trial by a fair and impartial jury, due process and freedom from cruel and unusual punishment under both the federal and state constitutions were not violated.

## II. Religious Beliefs of Prospective Jurors

Wheeler argues that it was prejudicial error to inquire into the religious beliefs of prospective jurors during individual voir dire and to excuse them from service or allow peremptory challenges to be used against them because of their religious beliefs. This issue is not properly preserved for appellate review and is raised as plain error as provided by RCr 10.26 and KRS 532.075(2). During the individual voir dire, the trial judge asked each juror several questions related to his or her religious beliefs. Not only did counsel for Wheeler not object to the line of questioning used by the trial judge of prospective jurors, but defense counsel participated in the development of the questions themselves. Decisions made during voir dire are generally regarded as trial strategy. *Hodge v. Commonwealth,* Ky., 17 S.W.3d 824, 837 (2000).

■ Pursuant to RCr 9.36(1), a prospective juror shall be excused as not qualified if there is reasonable ground to believe that the juror cannot render a fair and impartial verdict on the evidence. There was no error in the inquiry of the trial judge of prospective jurors if they held any moral, religious or spiritual beliefs that would interfere with their service on the jury. There is no violation of any provision of either the federal or state constitutions.

## III. Juror Excused During Trial

■ At the beginning of the third day of trial, Juror 537 informed the trial judge that her husband was approached that morning by a coworker, the defendant's wife, who engaged him in a conversation about the trial. The husband of the juror told her that he remembered Wheeler very well and that Wheeler had to be fired because he "stayed high on the job all the time." The juror also told the trial judge that family members of the victim kept staring at her when she would leave the courtroom. The trial judge struck the juror for cause because she had extrajudicial

knowledge that the defendant was fired because he stayed high all the time. The question of whether a juror should be excused for cause is a matter within the sound discretion of the trial judge. *Thompson; Alexander, supra.* The right to an unbiased decision by an impartial jury in a criminal trial is a basic principle of due process. *Hodge v. Commonwealth,* Ky., 68 S.W.3d 338 (2001). There was no abuse of discretion.

### IV. Batson Question

Wheeler contends that the exercise of peremptory challenges against African–American jurors violated the standards provided in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Wheeler asserts that the reasons offered by the prosecution for exercising a peremptory strike against Juror 536 does not withstand the close scrutiny of the Batson test. We disagree.

■■■ In exercising a peremptory challenge on Juror 536, the Commonwealth noted that she refused to state her opinion as to the death penalty, stating that she felt that her opinion was irrelevant. The Commonwealth further noted that the juror stated that she believed in redemption and salvation as opposed to fixing a punishment. A careful examination of the record indicates that the Commonwealth gave sufficient race-neutral explanations for the exercise of a peremptory challenge against African–American Juror 536. *See Woodall v. Commonwealth,* Ky., 63 S.W.3d 104 (2001). We find no error.

### V. Death Penalty Qualification

■■■ At trial, defense counsel filed a motion to preclude the removal of jurors who were not death qualified, or in the alternative, the defense requested that separate juries be selected for the guilt and penalty phases of the trial and that only the sentencing jury be death qualified. The trial judge overruled the motion after a hearing. This Court and the United States Supreme Court have repeatedly rejected the argument that death qualification of a jury violates the constitutional rights of the defendant. *See Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Brown v. Commonwealth,* Ky., 890 S.W.2d 286 (1994). There was no error.

### VI. Commonwealth Opening Statement

■■■ Wheeler claims that the use of the words "slaughterhouse" and "gutted like a pig" by the prosecutor in the opening statement warranted a mistrial because they were inflammatory and calculated to unduly prejudice the jury. We disagree.

The trial judge properly overruled the motion for a mistrial. We have held previously that a trial judge is in the best position to evaluate the existence of undue prejudice and in this case, she determined there was no undue prejudice. *Cf. Wilson v. Commonwealth,* Ky., 836 S.W.2d 872 (1992), *cert. denied,* 507 U.S. 1034, 113 S.Ct. 1857, 123 L.Ed.2d 479 (1993), *overruled on other grounds, St. Clair v. Roark,* Ky., 10 S.W.3d 482 (1999). Here, the comments of the prosecutor reflecting his opinion based on his view of the evidence were certainly colorful, but not improper. *Cf. Derossett v. Commonwealth,* Ky., 867 S.W.2d 195 (1993). Considering the general circumstances of this bloody crime, the words used by the prosecutor did not render the trial fundamentally unfair. *See Partin v. Commonwealth,* Ky., 918 S.W.2d 219 (1996).

■■■ Opening and closing statements are not evidence and wide latitude is allowed in both. *Slaughter v. Commonwealth,* Ky., 744 S.W.2d 407 (1987). Counsel may draw reasonable inferences from

the evidence and propound their explanations of the evidence and why the evidence supports their particular theory of the case. *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13 (1998), *cert. denied*, 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999).

### VII. Pregnancy of the Female Victim

 It was not prejudicial error to admit evidence that the female victim was pregnant at the time of her murder. The fact that the female victim was pregnant was only minimally presented during trial. It related to her physical condition and the jury was entitled to hear such evidence. This Court has previously stated that evidence about whom and what the victim was prior to death was properly admitted. *See Templeman v. Commonwealth*, Ky., 785 S.W.2d 259 (1990); *Campbell v. Commonwealth*, Ky., 788 S.W.2d 260 (1990); *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984). The pregnancy of the female victim was not sensational or shocking or prejudicial or likely to induce any undue sympathy. The brief reference to her pregnancy was fair comment to explain her identity. It did not deprive Wheeler of a fair trial. *Cf. Bowling v. Commonwealth*, Ky., 942 S.W.2d 293 (1997).

Wheeler also argues that KRS 532.025 is unconstitutional as applied to him because the jury could have considered three deaths by including the unborn child in finding the aggravating circumstances supporting the death penalty. The indictment does not mention the death of an unborn child. The jury instructions directed the consideration of two deaths, that of the male and female victims. Wheeler was not denied a fair trial or due process of law under either the federal or state constitutions. The admission of evidence relating to pregnancy was not fundamentally un-

fair. The probative value of the evidence was not substantially outweighed by the danger of undue prejudice. *See* KRE 403. The reference to pregnancy was not error. The statute is not unconstitutional.

### VIII. Tennis Shoes

It was not error for the trial judge to exclude the introduction of Wheeler's tennis shoes as evidence. During trial, the defense filed a supplemental reciprocal discovery response and gave notice that it was in possession of a pair of gray Nike tennis shoes that may be introduced into evidence. The prosecution objected on grounds of inadequate notice and a lack of chain of custody which would indicate that the proffered shoes were in fact the same shoes that Wheeler was wearing three and a half years earlier. The trial judge sustained the objection.

On avowal, Wheeler testified that on the day of his arrest he was wearing flip-flops when the police entered his mother's home. The police officer told him to put on different shoes and he put on tennis shoes. He stated that those were the shoes he was wearing at the time of the arrest and they had been his personal property for three and a half years. The tennis shoes were also admitted pursuant to avowal. Wheeler contends that his rights were violated because the tennis shoes were crucial to the defense theory that someone else was in the house the night the two victims were slain.

 The evidence was not relevant. According to Wheeler on appeal, the shoes would have supported his theory of the case if the prints from the excluded shoes did not match the numerous bloody shoe prints found at the crime scene. But this would be true if there was evidence to show that Wheeler was wearing the excluded shoes while he was in the apart-

ment when the murders were committed. This he failed to do.

Wheeler admitted to being in the apartment on the night that the murders were committed. Thus, if he could show that the shoes he was wearing *while he was in the apartment at the crucial time* did not match the shoe prints found at the crime scene, the shoes would have tended to support his theory of the case. But Wheeler did not testify that he was wearing the shoes while he was in the apartment the night the victims were slain. Nor did the defense offer any other evidence to link the shoes to the crime scene. Rather, Wheeler testified on avowal that he was wearing the shoes when he was arrested the next day. The mere fact that Wheeler owned a pair of shoes that may or may not have matched the shoe prints found at the crime scene did not tend to make the defense theory more probable. They were not relevant. KRE 401. The trial judge made the right ruling for the wrong reason. *See Noel Commonwealth,* Ky., 76 S.W.3d 923, 929 (2002); *Tamme,* 973 S.W.2d at 31.

## IX. Witness Credibility

■ The trial judge correctly denied the defense counsel the right to impeach a witness about her delay in reporting knowledge about the crime. The witness was working as a clerk at B–Line Food Mart on the night of the crime when Wheeler entered the store covered with blood. The witness testified that she recognized him from the neighborhood and from his prior visits to the store. Wheeler himself when testifying at trial admitted that he went into the store after leaving the home of the murder victims. On cross-examination, defense counsel wanted to question the witness regarding why she did not report to the police Wheeler's appearance on the night of the murders.

The defense sought to impeach the witness by revealing to the jury that she had a son who had been a victim in a later unrelated crime and that she was in court with her son on October 9, 1997, but she failed to mention Wheeler's appearance on the night of the murders.

The trial judge correctly sustained the prosecution's objection, stating that the line of questioning would be irrelevant, speculative and collateral and further that such questioning would create the impression that the witness was somehow involved with the murders or in trouble regarding a separate criminal matter. The trial judge did allow the defense to question the witness as to when she reported the incident to the police and what reason she had, if any, for the delay.

On avowal, the defense did question the witness about her involvement in the case in which her son was a victim. She also stated that in the present case she did not contact the police but that they contacted her and that she did not wish to testify for the Commonwealth and was extremely reluctant to testify for either party. The evidence offered by the defense was not within the purview of KRE 608 as a proper attack on the credibility of a witness. The defense had full knowledge of her testimony in her son's case and the fact that her son was a victim of a crime was totally irrelevant. *Cf. Bowling, supra.*

## X. No Improper Bolstering of Testimony

It was not error for the trial judge to allow the detective to explain his comments regarding the photo pack questioning by the defense. A police detective testified that the store clerk had identified Wheeler from a photo pack. When the prosecutor asked the detective if she had hesitated when she identified the photo, the defense objected on the grounds that

such testimony was improper bolstering because the defense had not challenged the testimony about identifying the photo. Wheeler argues that any reference to the photo pack identification by the witness should have been excluded. We disagree.

▮▮▮▮ The trial judge determined that the defense had opened the door to the issue of the presentation of the photo pack on cross-examination and that the prosecution was entitled to clarify the answers of the police detective on re-direct. Non-verbal conduct can be hearsay under the "implied assertion" rule. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.05 III(1), at 369 (3d ed. Michie 1993). The detective testified that the store clerk did not hesitate in her identification of Wheeler. This evidence of lack of hesitation was offered as an implied insertion by the store clerk that she was positive of her identification. Thus, it was hearsay. However, it falls within the hearsay exception at KRE 801A(a)(3). *Owens v. Commonwealth*, Ky., 950 S.W.2d 837 (1997).

## XI. Blood Spatter/Bite-mark Evidence

▮▮▮▮ The trial judge properly determined that Dr. Amy Burrows qualified as an expert witness so as to permit her to testify about both blood spatter and bite-mark evidence. She testified that the injury to Wheeler's arm was not a bite mark. KRE 702 allows such evidence if it will assist the trier of fact in understanding the evidence and determining factual issues. The pathologist was properly qualified and an adequate foundation was presented to establish her expertise. The admission by Wheeler that he was not bitten, but was instead stabbed in the arm by the "unknown murderer," negates his argument as to the bite-mark evidence. The training of the pathologist and her on-the-scene observations clearly qualified her to testify

about the evidence at the crime scene. The decision as to the qualifications of an expert is within the sound discretion of the trial judge and should not be disturbed in the absence of some abuse of discretion. *See Fugate v. Commonwealth*, Ky., 993 S.W.2d 931 (1999). *Cf. Mills v. Commonwealth*, Ky., 996 S.W.2d 473 (1999). There was no abuse of discretion.

## XII. Crime Scene Video

▮▮▮ There was no abuse of discretion by the trial judge in admitting the crime scene video into evidence. It was not cumulative. The trial judge did consider the objection by the defense but concluded that the 11–minute video was a more accurate depiction of the crime scene, showing the location and relationship of other evidence. In response to a motion by Wheeler for a new trial or judgment notwithstanding the verdict, the trial judge observed that she had exercised her discretion. Further, considering the size of the crime scene and the fact that there was blood everywhere, it was necessary to allow the use of the videotape to show the extent of the blood spattering and condition and placement of the victims. *Cf. McKinney v. Commonwealth*, Ky., 60 S.W.3d 499 (2001); *Cf. Hodge v. Commonwealth*, Ky., 17 S.W.3d 824 (2000). A careful examination of the record clearly shows that the photographs and the video were relevant for differing purposes and were not cumulative. There was no abuse of discretion.

## XIII. Instructions

The instructions issued by the trial judge during the guilt phase were appropriate to advise the jury regarding the law to be applied in this case, and they comply with all federal constitutional standards.

The instructions tendered by Wheeler were properly refused. In *Grimes v.*

*McAnulty*, Ky., 957 S.W.2d 223 (1997), we held:

A defendant is entitled to have the jury instructed on the merits of any lawful defense which he or she has. However, the entitlement to an affirmative instruction is dependent upon the introduction of some evidence justifying a reasonable inference of the existence of a defense. (Internal citations omitted.)

 The trial judge correctly found that no evidence had been introduced that the victims were the aggressors in the confrontation that led to their deaths. Wheeler had denied having anything to do with the murders. There was no evidence to support a self-protection instruction for the defendant. The trial judge properly found that the argument by the defense that two small cuts on Wheeler's right-hand knuckle were "defensive" wounds was not supported by the evidence. Even a preposterous defense must have some support in the evidence before it may be submitted to the jury. *Cf. Taylor v. Commonwealth*, Ky., 995 S.W.2d 355 (1999).

 The trial judge properly overruled a request for an intoxication instruction because there was insufficient evidence to allow such an instruction. There was no testimony, even from Wheeler himself, that he was intoxicated at the time of the murders. There was no evidence or even an inference that Wheeler was so intoxicated that he could not conform his conduct to the law at the time of the murders. *Tamme; Cf.* 1 Cooper, *Kentucky Instructions to Juries* (Criminal) § 11.30 (4th ed.1993).

 The trial judge was correct in denying the request by the defense for an instruction regarding extreme emotional disturbance. The trial judge correctly ruled that the defense theory was speculative because there was no evidence at trial

that the male victim had refused to give Wheeler any drugs. It was Wheeler's testimony at trial that the drugs had been voluntarily given.

 In order to use the EED instruction, there must be some definitive and nonspeculative evidence that the onset of the extreme emotional disturbance was caused by a triggering event. *Morgan v. Commonwealth*, Ky., 878 S.W.2d 18 (1994). Evidence of mere anger or hurt is not sufficient. *Talbott v. Commonwealth*, Ky., 968 S.W.2d 76 (1998). The refusal by the trial judge to give the instructions requested by Wheeler did not violate his right to a fair trial, due process and the right to present a defense under either the federal or state constitutions.

### XIV. Defense Psychiatrist (EED)

The trial judge did not improperly limit the penalty phase testimony of a defense psychiatrist regarding extreme emotional distress at the time of the murders. On avowal, Dr. Meyers expressed the opinion that the offenses were committed while Wheeler was under EED at the height of his substance dependence on cocaine.

 The trial judge properly limited the testimony of the defense psychiatrist as to the effects of substance abuse. Further, she did not err in prohibiting testimony that there was EED in October 1997, or on the weighing of the mitigating and aggravating factors. Citing *Sanborn v. Commonwealth*, Ky., 892 S.W.2d 542 (1995), the trial judge correctly determined there was no evidence of a triggering event of any kind. Thereafter, the psychiatrist was permitted to testify. Among other things, he stated that chemical abuse was not an excuse and that he had only one contact with Wheeler. Following his testimony, the psychiatrist testified by avowal, stating that the mitigation outweighed the aggravating factors and that

although not an excuse for the offenses, the crimes were committed while Wheeler was under EED caused by the dependency craving.

■ Evidence only of drug dependency is not sufficient to justify an instruction for EED. *Stopher v. Commonwealth,* Ky., 57 S.W.3d 787, 803 (2001); *Stanford v. Commonwealth,* Ky., 793 S.W.2d 112, 115 (1990). The limitation on the testimony of the defense psychiatrist did not violate Wheeler's right to present a defense, a fair trial, due process or to be free from cruel and unusual punishment under either the state or federal constitutions.

## XV. Preparation of Videotape Transcript

Wheeler contends that the trial judge had authority to order preparation of transcript of evidence for appeal. He frames the issue as whether the trial judge has statutory authority to order the preparation of a transcript for use in a capital appeal. He asserts that the trial judge could exercise her discretion to order the preparation of a transcript to be used for the preparation and presentation of the case on appeal.

■ We find this argument to be without merit. Although the trial judge would have discretion in ordering a transcript, we find it unnecessary that one be produced in this case. The use of videotaped records rather than the typewritten transcripts does not deny a defendant effective assistance of appellate counsel. *Marshall v. Commonwealth,* Ky., 60 S.W.3d 513 (2001). In fact, the use of the videotape could eliminate the possibility of errors in transcription and may in fact reveal errors that might be overlooked in a transcribed record. *Marshall, supra.* Wheeler has demonstrated no prejudice resulting to him from the use of a videotaped record without an additional typewritten transcript. He has been provided with a complete trial record pursuant to *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). The use of a videotape record does not deny Wheeler due process.

## XVI. Indictment/Aggravating Circumstance

■ The indictment was valid on its face and conformed to statutory requirements and the indictment in regard to aggravating circumstances was not defective. The indictment against Wheeler satisfied the requirements of RCr 6.10 because it informed him that he was charged with a violation of KRS 507.020, murder, and sets out the date, place and name of the victims he is charged with intentionally murdering. In *Wylie v. Commonwealth,* Ky., 556 S.W.2d 1 (1977), this Court held that an indictment is sufficient if it informs the accused of the specific offense with which he is charged and does not mislead him. The citation by Wheeler to *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), which relates to federal prosecutions, is not contradictory to our RCr 6.10. *Jones, supra,* holds that the indictment should furnish the accused with a description of the charge which will enable him to make his defense. To the extent that *Jones* applies in any regard, due process has been fully satisfied here. Under any test, the indictment was sufficient.

KRS 532.025(1)(a) only requires the Commonwealth to notify the defendant of aggravating circumstances "prior to trial." *See Stopher, supra,* at 793. There is no authority supporting Wheeler's claim that an aggravating circumstance must be described in the indictment. The aggravating circumstance here was multiple deaths and he was indicted for killing two persons.

## XVII. Mutually Supporting Aggravator/Double Jeopardy

Wheeler argues that the use of mutually supported aggravating circumstances violates the prohibition against double jeopardy contained in Section 13 of the Kentucky Constitution and the Fifth Amendment to the Federal Constitution. We disagree.

We decline to follow the theory presented by Wheeler of the Georgia principle of denying imposition of multiple death sentences. The Georgia statute which is relied upon by Wheeler is different from the Kentucky statute.

This Court has previously considered this issue in *Bowling v. Commonwealth*, Ky., 873 S.W.2d 175 (1993) and *Tamme* and held that the multiple death restriction does not prohibit enhancement. *Accord Jones*. No error occurred.

## XVIII. Second Murder as Substantive and Aggravating Factor

The use of another murder as a substantive crime and as an aggravating circumstance does not violate double jeopardy principles. Here, Wheeler was sentenced to death for the death of each of the two victims, aggravated by the fact that he also intentionally killed the other victim. *Tamme* held that the imposition of two death sentences by the application of the same aggravating factor, the intentional act of killing resulting in multiple deaths, did not violate any double jeopardy principle.

Reliance by Wheeler on the cases of *Heady v. Commonwealth*, Ky., 597 S.W.2d 613 (1980); *Boulder v. Commonwealth*, Ky., 610 S.W.2d 615 (1980) and *Dale v. Commonwealth*, Ky., 715 S.W.2d 227 (1986), is misplaced. To the extent they apply, these cases only limited the use of an offense to enhance one punishment and clearly relate to a status and not a crime. Each of these cases have been limited in their application. *See Jackson v. Commonwealth*, Ky., 650 S.W.2d 250 (1983) and *Eary v. Commonwealth*, Ky., 659 S.W.2d 198 (1983). There was no constitutional violation and no error occurred.

## XIX. Lethal Injection

Wheeler argues that the death penalty is unconstitutional under the federal and Kentucky constitutions because the method used to carry out the sentence, lethal injection, is cruel and unusual punishment. Wheeler's claim that lethal injection is a violation of the Eighth Amendment against cruel and unusual punishment is without any case law support from Kentucky or elsewhere. It has been held in *People v. Stewart*, 121 Ill.2d 93, 117 Ill.Dec. 187, 520 N.E.2d 348 (1988), *cert. den.*, 488 U.S. 900, 109 S.Ct. 246, 102 L.Ed.2d 234 (1988), that medical experts urge that death by lethal injection is the most humane of any method of execution. Certainly, it is not cruel and unusual punishment. Death by electrocution also does not violate either federal or Kentucky law. *Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989). Wheeler has also failed to demonstrate that either method of execution conflicts with any societal norms.

## XX. Discriminatory, Arbitrary or Disproportionate

Wheeler argues that the death penalty is discriminatory, arbitrary and disproportionate. We disagree.

Wheeler has not shown in his particular case that his death sentence is discriminatory, arbitrary or disproportionate. This Court and the United States Supreme Court have repeatedly rejected the statistical analysis presented by Wheeler as in-

sufficient to invalidate a specific finding by a jury. *Woodall, supra; Bowling.*

## XXI. Insufficient Statutory Guidance

■ There is sufficient statutory guidance for the imposition of the death penalty in Kentucky. Wheeler contends that KRS 532.025 is insufficient to provide constitutionally adequate guidance to juries who sentence in capital cases. This argument has previously been rejected by this Court. *See Bowling.*

## XXII. Articulated Standard of Review

The trial judge properly imposed the sentence of death as fixed by the jury after a consideration of all the evidence. Wheeler complains that the role of the trial judge in sentencing is not clearly articulated and seeks to have *Bowling* overruled. We have previously considered and rejected this argument in *Bowling* and we find the argument to be without merit in this case.

■ Due process was not violated because the trial judge did have a separate and distinct role as contemplated by KRS 532.025 and KRS 532.030. *Matthews v. Commonwealth*, Ky., 709 S.W.2d 414 (1985). Wheeler was not denied due process or rational sentencing. There was no violation of either the state or federal constitution.

## XXIII. Proportionality

■ This Court has determined on many occasions that the proportionality review it conducts in conformity with KRS 532.075(3) is constitutional. *See Tamme.* Under all the circumstances of this case, the death sentence is entirely appropriate. The proportionality review conducted by this Court does not violate due process or equal protection.

Pursuant to KRS 532.075(3), we have reviewed the death sentence imposed herein and conclude that it was not imposed under the influence of passion, prejudice or any other arbitrary factor. There was ample evidence to support the finding of aggravating factors concerning which the jury was instructed. We have also reviewed all the cases decided since 1970 in which the death penalty was imposed. We have given particular attention to those in which the defendant was sentenced to death for multiple intentional murders. All of the cases reviewed have been previously cited by this Court in a number of decisions. *See Hodge v. Commonwealth*, Ky., 17 S.W.3d 824 (2000) and *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988). The comprehensive lists which are provided in each of these opinions are incorporated herein by reference. We have also reviewed the cases of *Woodall v. Commonwealth*, Ky., 63 S.W.3d 104 (2001); *Stopher v. Commonwealth*, Ky., 57 S.W.3d 787 (2001); *Mills v. Commonwealth*, Ky., 996 S.W.2d 473 (1999); *Bussell v. Commonwealth*, Ky., 882 S.W.2d 111 (1994); *Sanborn v. Commonwealth*, Ky., 892 S.W.2d 542 (1994); *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872 (1992); *Taylor v. Commonwealth*, Ky., 821 S.W.2d 72 (1991); *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1991); *Epperson v. Commonwealth*, Ky., 809 S.W.2d 835 (1990); *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407 (1988).

We have also considered whether the sentence of death is excessive or disproportionate to the penalty imposed in these cases as required by statute and have therefore considered all circumstances of the crime committed here and all of the evidence surrounding the defendant and his background. The information used in considering this penalty has been compiled in accordance with KRS 532.075(6)(a), (b) and (c). On the basis of this review, we

**188**

have determined that the sentence of death in this case was not excessive or disproportionate to the penalties imposed in similar cases considering both the crimes and the defendants.

## XXIV. Arbitrary or Disproportionate

 The death sentence imposed on Wheeler was not arbitrarily or disproportionately applied in this case. There is no constitutional infirmity in the manner in which the proportionality review is conducted by this Court. *Bowling.* Here, the jury found the existence of an aggravating factor in each case, and death is the appropriate sentence. *See Smith v. Commonwealth,* Ky., 599 S.W.2d 900 (1980). A careful review of the record supports the ultimate jury decision. The jury knew that Wheeler had been convicted of ten counts of first-degree robbery in 1991 and sentenced to 20 years in prison. In 1998, he was convicted of cocaine possession and sentenced to one year consecutive to the 20–year term. The jury also heard evidence of the good behavior of the accused while he was in prison. The weight to be given to any mitigating circumstances is within the sound discretion of the sentencing jury. Here, the death sentence is proper under the factual circumstances. *Cf. Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).

## XXV. Penalty Phase Instructions

Wheeler contends that the combined effect of penalty phase instructions 6 and 7 invade the province of the jury and creates a substantial possibility that the jury believed it should impose the death penalty.

 The instructions in question do not violate the statutory system nor do they invade the province of the jury. The forms used follow those provided in 1 Cooper, *Kentucky Instructions to Juries* (Criminal) § 12.08 (4th ed.1999). These instructions did not coerce the jury into believing that it must impose the death penalty because they permit an option even when a finding is made on the aggravating circumstances. *Wilson, supra; McKinney, supra.*

No error occurred and there was no violation of either the federal or state constitution. The jury was not instructed that it needed a reasonable doubt to impose a death sentence.

## XXVI. Defense Penalty Instructions

Wheeler argues that the penalty phase instructions denied him due process and a reliable capital sentencing. He claims 13 errors in support of his contention. Before the beginning of the penalty phase, both the prosecution and the defense tendered proposed jury instructions to the trial judge and a hearing was held. The tendered penalty phase instructions of Wheeler were not in conformity with the accepted standards of penalty phase instructions and were correctly refused by the trial judge. The claims of Wheeler have been previously rejected in other death penalty cases by this Court. *Foley v. Commonwealth,* Ky., 953 S.W.2d 924 (1997); *Mills, supra.*

 There is no statutory requirement for a trial judge to instruct that findings on mitigating circumstances do not have to be unanimous nor is there a burden of proof requirement. *See Bowling.* The jury was instructed to consider nonstatutory mitigating factors but there is no requirement that the jury be instructed on specific nonstatutory mitigating circumstances. *See Sanders v. Commonwealth,* Ky., 801 S.W.2d 665 (1990). There is no requirement that the trial judge must give an instruction that the jury must conduct a balancing test be-

tween the aggravating and mitigating factors. *See Hodge, supra.*

 There is also no statutory authority for separate instructions to the jury that if it did not find any of the mitigating circumstances to exist the jury still had the option of sentencing to something less than death. The instructions in this case specifically permitted the jury to consider the entire range of penalties. There was no constitutional defect pursuant to either the federal or state constitutions.

### XXVII. Verdict Forms

Wheeler argues that the verdict forms used were constitutionally flawed because they precluded consideration of a term of years or life in prison. He admits that the jury was informed by Instruction No. 6 that it did not have to sentence him to death, to life without parole for 25 years or life without parole even if it found the existence of the aggravating circumstance, multiple deaths. He contends that there is a substantial probability that such information was somehow misunderstood, lost or forgotten. We disagree.

 The verdict forms did not in any way misinform or mislead the jury. They were correct. *See Mills.* The forms did not preclude the jury from consideration of a term of years or life imprisonment. There was no constitutional error of any kind.

### XXVIII. Closing Argument

The closing argument by the prosecutor during both the guilt and penalty phases of the trial did not in any way deprive Wheeler of due process or a fair trial.

Wheeler presents a litany of complaints including the pregnancy of the female victim; the burden of proof; the dead witness; the police examination of the automobile and the penalty phase arguments of the prosecutor. We find none of these contentions to have merit. The comments of the prosecutor were fair and at no time did the prosecutor inform the jury not to consider all evidence or all sentencing options. No manifest injustice resulted from the nature of any of these arguments. KRE 103(e); RCr 10.26.

 When reviewing claims of error in closing argument, "the required analysis, by an appellate court, must focus on the overall fairness of the trial and not the culpability of the prosecutor.... A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." *Slaughter, supra,* at 411–12. Reversal is only justified when the alleged prosecutorial misconduct is so serious as to render the trial fundamentally unfair. *Summitt v. Bordenkircher,* 608 F.2d 247 (6th Cir. 1979); *Stopher; Partin, supra.* Here, the prosecutor did not go beyond the permissible boundaries of closing argument. There is no evidence of prosecutorial misconduct that would render the trial of Wheeler fundamentally unfair.

A careful review of the statements of the prosecutor in both the guilt and penalty phase of the trial did not render the entire trial unfair. He did not mislead the jury or mischaracterize or denigrate the mitigation. There was no cumulative error in this or any other part of the proceedings.

The judgment of conviction and the sentence are affirmed.

LAMBERT, C.J., COOPER, GRAVES and JOHNSTONE, JJ., concur.

KELLER, J., concurs by separate opinion.

STUMBO, J., dissents by separate opinion.

KELLER, Justice, concurring.

I vote to affirm Appellant's convictions and sentences, but I write separately as to Part VII ("Pregnancy of the Female Victim") because I disagree with the majority's suggestions that "the jury was entitled to hear such evidence,"[1] that the evidence "was properly admitted,"[2] and that the evidence was "fair comment to explain her identity."[3] In fact, I agree wholeheartedly with Justice Stumbo's analysis and conclusion that this evidence was wholly irrelevant and therefore inadmissible. I nonetheless concur in the result reached by the majority opinion because I disagree with Justice Stumbo's conclusion as to the prejudice associated with the erroneous admission of this evidence. Instead, I agree with what the majority has to say in the first sentence in Part VII—"[i]t was not prejudicial error to admit evidence that the female victim was pregnant at the time of her murder."[4] The brief reference to the victim's pregnancy was harmless in the context of this case and did not call the jury's verdicts into question or raise the inference that Appellant was deprived of his right to a fair trial.

STUMBO, Justice, dissenting.

Respectfully, I must dissent from the majority's holding that the trial court did not err in allowing limited evidence that Nairobi Warfield was pregnant when she was murdered.

The fact that one of the two victims was pregnant did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Springer v. Commonwealth,* Ky., 998 S.W.2d 439, 449 (1999) (quoting KRE 401). KRE 402 provides that irrelevant evidence is inadmissible. Additionally, the underlying premise of KRE 403 is a balancing test between probative value and prejudicial effect. KRE 403 provides that relevant evidence may be excluded when the probative value is substantially outweighed by the prejudicial effect.

The parties agree that the introduction of evidence that Ms. Warfield was pregnant was mentioned briefly and without elaboration. In *Nugent v. Commonwealth,* Ky., 639 S.W.2d 761, 764 (1982), this Court observed "where the value of evidence for a legitimate purpose is slight and the jury's probable misuse of the evidence for an incompetent purpose is great, the evidence may be excluded altogether." If, as contended, the evidence was of minimal value to the Commonwealth's case, it is reasonable to infer that the mere reference to pregnancy would characterize Appellant as the murderer of a mother and her unborn child, and thus would have had an undue prejudicial effect.

The trial court reasoned that the evidence was admissible, as the pregnancy was a necessary part of explaining to the jury who Ms. Warfield was. I disagree. The facts sufficiently illustrated to the jury the brutality of the murders. The Commonwealth was required to prove that Appellant caused Ms. Warfield's death and no more. The fact that Ms. Warfield was pregnant had no bearing on meeting this burden.

Appellant argues, and I agree, that the probative value of the evidence of Ms. Warfield's pregnancy did not outweigh the

---

1. *Wheeler v. Commonwealth,* Ky., op. at 181.

2. *Id.*

3. *Id.*

4. *Id.*

potential for undue prejudice to Appellant. The evidence was irrelevant to the determination of Appellant's guilt, and was therefore inadmissible. Thus, the trial court erred by allowing limited evidence that Ms. Warfield was pregnant when she was murdered.